UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FRANCISCO MENDOZA, MIGUEL MARTINEZ and KEVIN RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>CARDINAL MULTI SERVICES LLC<br>5504 Oakwood Road<br>Alexandria, VA 22310<br><br>Serve Resident Agent:<br><br>    Christopher Lee Aguilar<br>    5504 Oakwood Road<br>    Alexandria, VA 22310<br><br>WILSON O. AGUILAR<br>6412 Franconia Road<br>Springfield, VA 22150<br><br>                    Defendants. | Civil Action No. 21-cv-00685 |

**COLLECTIVE ACTION COMPLAINT**

     1.     Plaintiffs Francisco Mendoza, Miguel Martinez, and Kevin Rodriguez bring this action against their former employers, Cardinal Multi Services LLC ("CMS") and Wilson O. Aguilar. Plaintiffs bring this lawsuit to challenge Defendants' policies of (1) not paying overtime wages for hours worked over 40 hours in a workweek; (2) deducting 30 minutes of time from every shift for unpaid meal breaks that were not taken; and (3) not paying for time spent performing tasks integral to their construction work before arriving at the worksite.

1

2. Plaintiffs seek to recover wages and overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29.

3. Plaintiffs bring this claim on behalf of themselves and all similarly situated employees, including all current and former non-exempt employees of Defendants CMS and Aguilar who performed construction work for the period of three (3) years before the filing of the instant Complaint.

4. This action is brought as a collective action under the FLSA and the Virginia Wage Payment Act on behalf of Plaintiffs and all those similarly situated.

## Jurisdiction and Venue

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216.

6. Venue is proper because the acts alleged in this Complaint arose in this district and the Defendants are residents of this district.

## The Parties

7. Plaintiff Francisco Mendoza is a resident of Maryland and worked as an hourly, non-exempt construction employee for Defendants CMS and Aguilar.

8. Plaintiff Miguel Martinez is a resident of Maryland and worked as an hourly, non-exempt construction employee for Defendants CMS and Aguilar.

9. Plaintiff Kevin Rodriguez is a resident of Maryland and worked as an hourly, non-exempt construction employee for Defendants CMS and Aguilar.

10. As required by the FLSA, 29 U.S.C. § 216(b), each Plaintiff has given his written consent to become a party to this action. True and correct copies of Plaintiffs' FLSA consent forms will be filed concurrently as a Notice of Filing Consents to Join Action.

11. Defendant CMS is a Virginia corporation engaged in the business of providing underground utility installation, asphalt, and traffic control services to public and private construction projects throughout Northern Virginia, Washington, DC, and Maryland. Its principal office and base of operations is located at 5504 Oakwood Road, Alexandria, Virginia.

12. At all times relevant to this action, CMS has been an enterprise engaged in interstate commerce or in the production of goods for commerce, within the meaning of the FLSA, and has been Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g) and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29.

13. Defendant Aguilar is the principal and owner of CMS. Upon information and belief, he resides at 6412 Franconia Road, Springfield, Virginia.

14. At all times relevant to this action, Defendant Aguilar has exercised direct operational control over CMS. He has the power to and regularly exercises the authority to hire and fire employees and make decisions regarding the pay of his employees. Aguilar was Plaintiffs' employer, and is or was the employer of those similarly situated, within the meaning of the FLSA, 29 U.S.C. § 203(g) and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29.

15. At all times pertinent to this action, Defendants were joint employers of the Plaintiffs and those similarly situated within the meaning of the FLSA and its regulations (including 29 C.F.R. § 791.2).

## General Allegations

16. Plaintiffs were employed by Defendants to perform construction work on public and private construction projects in Virginia, Maryland, and the District of Columbia.

17. Defendants did not classify Plaintiffs and other construction workers as exempt. Plaintiffs did not perform any work that was of a *bona fide* executive, administrative, or professional nature, or that would otherwise exempt them from the Fair Labor Standards Act or the Virginia Wage Payment Act.

18. Throughout the course of Plaintiffs' employment, Defendants paid Plaintiffs an hourly wage.

## Overtime Allegations

19. Plaintiffs routinely worked more than 40 hours per week in a single workweek. Defendant CMS did not pay them an overtime premium for the hours they worked over 40 hours in a week.

20. Defendants required Plaintiffs and other construction workers to report for work at the CMS office in Alexandria, Virginia. Defendant Aguilar instructed them to arrive "early." Plaintiffs and other construction workers typically arrived at the CMS office at 5:00 am.

21. Between 5:00 am and 6:00am, Defendants, through their foremen, instructed Plaintiffs and other construction workers to load tools and equipment on CMS trucks for that day's projects.

22. Sometimes Defendants provided oral instructions and assigned Plaintiffs to projects at the CMS office. Other times, Defendants or their foreman sent this information by text message.

23. These tasks were integral and indispensable tasks necessary for Plaintiffs and the other construction workers to perform their job on the worksite. *See* 29 C.F.R. § 785.24.

24. CMS required Plaintiffs to ride in CMS trucks with their assigned crew to the project worksite. The trucks typically left the CMS office to travel to the project worksites between 6:00 am and 6:30 am.

25. Defendants did not pay Plaintiffs and other construction workers for the time spent loading tools and equipment or driving to the project worksite.

26. In addition, Defendants did not schedule meal breaks for its workers or require them to take a meal break. During all material times, they did not maintain a mechanism for their workers to clock in or out for a meal break. They did not permit the workers to leave the construction worksite during the workday.

27. Defendants did not permit Plaintiffs to take an uninterrupted, 30-minute meal break while working. When Plaintiffs tried to fit in a meal during their shift, they were required to return to work after only 10 to 15 minutes or less. Plaintiffs heard Aguilar and other CMS foremen threaten discipline if workers delayed returning to work during their meal break.

28. Regardless of the length of the meal break, if any, Defendants CMS and Aguilar automatically deducted a 30-minute unpaid lunch break from Plaintiffs' hours worked, even though Plaintiffs and other construction workers performed work during their entire shifts and do not get a *bona fide* 30-minute meal break.

29. Defendant Aguilar responded to Plaintiffs' complaints about not being paid during their interrupted meal breaks by stating: "I don't pay that half-hour."

30. At all material times, Defendants had a policy of not paying Plaintiffs and other construction workers for all time worked by automatically deducting 30-minute meal breaks

form each shift worked by construction workers, even though such meal breaks were interrupted and cut short. Plaintiffs are thus shorted in their pay up to 30 minutes each shift.

31. Plaintiffs and other construction workers reported for work at the CMS office at 5:00 am to load tools and prepare for their work. They performed construction work at the project worksite beginning at 7:00 am. They worked for 8.5 to 12 hours per day at the project worksite, plus up to 2 hours before arriving at the worksite. Their daily hours were determined by Defendants and their foreman, who told Plaintiffs when to start and stop working. Plaintiffs generally worked Monday through Friday and sometimes on Saturday. In total, Plaintiffs and other construction workers worked up to 14 hours per day and up to 84 hours per workweek.

32. For example, Plaintiff Mendoza's workday typically began at 5:00 am when he reported to the CMS office and loaded tools and equipment for the day's project. He then worked at the project worksite from approximately 7:00 am to 7:00 pm on most workdays without a *bona fide* meal break.

33. Plaintiff Mendoza worked between 70 and 84 hours per week. He was not paid a premium for the hours he worked over 40 in a workweek.

34. Plaintiff Martinez's workday typically began at 5:00 am when he reported to the CMS office and loaded tools and equipment for the day's project. He then worked at the project worksite from approximately 7:00 am until 4:00 pm on most workdays, but worked as late as 7:00 pm when Defendants instructed him to do so without a *bona fide* meal break.

35. Plaintiff Martinez worked between 55 and 84 hours per week. He was not paid a premium for the hours he worked over 40 in a workweek.

36. Plaintiff Rodriguez's workday typically began at 5:00 am when he reported to the CMS office and loaded tools and equipment for the day's project. He then worked at the project

6

worksite from approximately 7:00 am until 3:30 pm on most workdays, but worked as late as 7:00 pm when Defendants instructed him to do so without a *bona fide* meal break.

37. Plaintiff Rodriguez worked between 52.5 and 84 hours per week at the project worksite. He was not paid a premium for the hours he worked over 40 in a workweek.

38. At all material times, Defendants had a policy of not paying Plaintiffs and other construction workers at time-and-one-half for their work when Defendants caused Plaintiffs to work more than 40 hours in a workweek.

39. Under the FLSA, Defendants were required to pay Plaintiffs one-and-one-half times their regular rate for all hours worked over 40 hours in a workweek. 29 U.S.C. § 207(a)(1).

40. In furtherance of Defendants' unlawful policy to deny overtime pay, in or about March 2020, Defendants changed from a weekly to a biweekly pay schedule. Thereafter, Plaintiffs' wage statements showed a total number of hours worked in the pay period. Defendants paid straight-time pay for all the hours reported on the wage statement. Yet, Defendants often required Plaintiffs to work more than 40 hours per workweek, such that some of the reported hours must be paid at the overtime premium rate. The biweekly pay schedule allowed Defendants to conceal the number of hours their employees worked each week and their eligibility for overtime pay.

41. In Plaintiffs' experience, Defendants did not report hours worked above 80 hours in the biweekly pay period on their wage statements.

**Collective Action Allegations**

42. This action is maintainable as an "opt-in" collective action as to claims for unpaid wages, liquidated damages, interest, and attorneys' fees and costs under the FLSA and the Virginia Wage Payment Act.

43. Plaintiffs bring the claims on behalf of themselves and all similarly-situated employees, including all current and former non-exempt employees of Defendants who performed construction work during the period of three (3) years before the filing of the instant Complaint.

44. Upon information and belief, there are numerous current and former non-exempt employees of Defendants who are similarly situated to Plaintiffs. The precise number of similarly-situated employees is known only to Defendants.

45. Because these similarly situated employees are readily identifiable to Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, and attorneys' fees and costs under the FLSA and the Virginia Wage Payment Act.

46. A collective action is appropriate in this case because Plaintiffs and potential plaintiffs: (1) are or were employees of Defendants during the statutory period; (2) have or had similar duties and performed similar tasks; (3) allege similar violations of the FLSA and the Virginia Wage Payment Act in the form of unlawful compensation policies; and (4) seek the same remedies.

47. Plaintiffs are adequate representatives of the collective class because they were non-exempt employees who performed construction work for Defendants and were not properly

compensated for their overtime hours and interrupted meal breaks during the time they performed work for Defendants.

## COUNT I
## VIOLATION OF THE FLSA
## [29 U.S.C. § 201 et. seq.]

48. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

49. Plaintiffs bring this claim on behalf of themselves and all similarly situated employees, including all current and former non-exempt employees of Defendants who performed construction work during the period of three (3) years before the filing of the instant Complaint.

50. Under Section 7(a) of the FLSA, 29 U.S.C. § 207(a), Defendants were required to pay the Plaintiffs and all similarly situated employees one-and-one-half of their applicable regular wage rate for their hours worked in excess of 40 per workweek.

51. Defendants have violated the requirements of the FLSA by failing to pay its employees at one-and-one-half their applicable regular wage rate for all hours worked in excess of 40 in a workweek, including the time spent working during unpaid meal periods and time spent performing tasks integral to their principal activities prior to arriving at the construction worksite.

52. Defendants' actions were willful as evidenced by its attempts to conceal its failure to pay Plaintiffs and all similarly situated employees all wages due, including overtime, and by the statements of Defendant Aguilar that he "does not pay that half-hour" for meal breaks despite Plaintiffs' performing work during that time. Defendants knew, or should have known, that such pay was due.

53. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and all similarly situated employees are entitled to an additional equal amount as liquidated damages pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 216(b).

54. Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs and all similarly situated employees for all unpaid wages in such an amount to be proven at trial, plus statutorily available liquidated damages equal to the amount of unpaid wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate. 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE VIRGINIA WAGE PAYMENT ACT
### [Va. Code Ann. § 40.1-29]

55. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

56. Plaintiffs bring this claim on behalf of themselves and all similarly situated employees, including all current and former non-exempt employees of Defendants who performed construction work during the period of three (3) years before the filing of the instant Complaint.

57. Under the Virginia Wage Payment Act, Defendants were required to pay the Plaintiffs and all similarly situated employees for all hours worked and may not "withhold any part of the wages or salaries of any employee." Va. Code Ann. § 40.1-29(C).

58. Defendants have violated the requirements of the Virginia Wage Payment Act by withholding pay equivalent to thirty minutes of Plaintiffs' work for meal breaks that Defendants did not permit Plaintiffs to take and by withholding pay for performing tasks integral to their principal activities prior to arriving at the construction worksite.

59. Defendants knowingly violated the Virginia Wage Payment Act as evidenced by its attempts to conceal its failure to pay Plaintiffs and all similarly situated employees all wages due and by the statements of Defendant Aguilar that he "does not pay that half-hour" for meal breaks despite Plaintiffs' performing work during that time. Defendants knew, or should have known, that pay was due for all hours worked and cannot be withheld for a meal break during which Plaintiffs performed work or for time spent performing work prior to arriving at the construction worksite.

60. Due to Defendants knowing failure to pay wages to Plaintiffs, Plaintiffs and all similarly situated employees are entitled to an additional amount equal to triple the amount of wages due as liquidated damages pursuant to Virginia Code § 40.1-29(J).

61. Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs and all similarly situated employees for all unpaid wages in such an amount to be proven at trial, plus statutorily available liquidated damages equal to triple the amount of unpaid wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate. Va. Code Ann. § 40.1-29(J).

## Jury Demand

Plaintiffs hereby request a trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated persons, pray for the following relief:

1. Enter judgment against Defendants, jointly and severally, for all unpaid straight-time and overtime wages found due to Plaintiffs and all similarly situated employees as a result

of Defendants' violations of 29 U.S.C. § 207(a), plus an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

      2.      Enter judgment against Defendants, jointly and severally, for all unpaid wages found due to Plaintiffs and all similarly situated employees as a result of Defendants' violations of Virginia Code § 40.1-29, plus an additional amount equal to triple the unpaid wages as liquidated damages, pursuant to Virginia Code § 40.1-29(J);

      3.      Certify this action as a Collective Action under 29 U.S.C. § 216(b) and Va. Code Ann. § 40.1-29(J);

      4.      Award Plaintiffs all wages owed by Defendants for Plaintiffs' work during the period of three (3) years before the filing of the instant Complaint;

      5.      Award Plaintiffs liquidated and compensatory damages to the fullest extent permitted under the law;

      6.      Award Plaintiffs litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law;

      7.      Award Plaintiffs interest on all of the forgoing at the legal rate from the date of judgment until payment in full; and

      8.      Award such other relief as this Court deems just and proper.

Dated: June 8, 2021                      Respectfully submitted,

                                            /s/ *Mark Hanna*
                                            Mark Hanna (Virginia Bar No. 45442)
                                            Roseann R. Romano (pro hac forthcoming)
                                            Murphy Anderson PLLC
                                            1401 K Street NW, Suite 300
                                            Washington, DC 20005
                                            Phone: (202) 223-2620
                                            Fax: (202) 296-9600
                                            mhanna@murphypllc.com