UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FRANCISCO MENDOZA, MIGUEL MARTINEZ and KEVIN RODRIGUEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CARDINAL MULTI SERVICES LLC and WILSON O. AGUILAR, <br><br> Defendants. | Civil Action No. 21-cv-00685 |

### MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND COURT-FACILITATED NOTICE

**I.     INTRODUCTION**

Named Plaintiffs Francisco Mendoza, Miguel Martinez, and Kevin Rodriguez (collectively, "Plaintiffs"), by and through undersigned counsel, move for conditional certification of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29(J), and for approval and facilitation of notice of the pending action to similarly-situated persons. Cardinal Multi Services LLC ("CMS") and its owner Wilson O. Aguilar (collectively, "Defendants"), employed Plaintiffs to perform construction work, but did not pay them their earned overtime wages, deducted from their pay time for lunch breaks that were not taken, and excluded from their pay work performed prior to arriving at the construction worksite, in violation of the FLSA and the Virginia Wage Payment Act. As detailed below, Plaintiffs and the class they seek to represent are or were construction workers who have been similarly subjected to Defendants' common schemes to

violate the FLSA and the Virginia Wage Payment Act. Plaintiffs respectfully request an order permitting them to give notice of this lawsuit to other similarly-situated persons, to advise such persons of their opportunity to participate and proceed collectively to address their claims.

While the precise number of prospective plaintiffs is unknown, so far three workers have joined the action. The prospective class members are similarly situated by virtue of the fact that they: (1) are or were employed by Defendants to perform construction work; and (2) are or were subject to the compensation policies and practices challenged in this case. Plaintiffs estimate that dozens of current and former employees are similarly situated and have similar claims.

Accordingly, Plaintiffs request that the Court: (1) conditionally certify Plaintiffs' FLSA and Virginia Wage Payment claims to proceed as a collective action; (2) approve sending Plaintiffs' proposed English and Spanish Notice of Collective Action Lawsuit ("the Notice") and Consent to Join Action Form (attached as Exhibits A and B) to all current and former individuals employed by Defendants to perform construction work at any time since three years before the filing of the present lawsuit; (3) order Defendants to provide Plaintiffs' counsel, within 14 days of this Court's Order, an electronic database of the full names and contact information of all current and former employees engaged in construction work, including those employees' last known addresses and telephone numbers, in order to assist in the location of employees who have moved; (4) order Defendants to post a copy of the Notice in a visible and accessible location at all CMS offices and worksites; (5) authorize Plaintiffs to disseminate their Notice and Opt-In Form by mail and telephone; and (6) authorize Plaintiffs to disseminate a reminder notice at the midpoint of the opt-in period. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989) (describing the court's role in supervising the notice process).

**II.     FACTS**

CMS is a construction company operating in Virginia, Maryland, and Washington, D.C. CMS provides underground utility installation, asphalt, and traffic control services to public and private construction projects. *See* https://cardinalmultiservices.com/. Plaintiffs and similarly situated construction workers performed a variety of construction tasks during their employment. Declaration of Francisco Mendoza, attached hereto ("Mendoza Decl.") ¶ 2; Declaration of Miguel Martinez, attached hereto ("Martinez Decl.") ¶ 2; Declaration of Kevin Rodriguez, attached hereto ("Rodriguez Decl.") ¶ 2. They were paid hourly wages and subjected to the same employment policies. Mendoza Decl. ¶ 4; Martinez Decl. ¶ 4; Rodriguez Decl. ¶ 4.

Defendants subjected and continue to subject Plaintiffs and other construction workers to a common scheme to violate the FLSA. Specifically, Defendants (1) failed or refused to pay construction workers an overtime wage of one-and-one-half times their regular rate of pay for hours worked beyond 40 in a workweek; (2) deducted thirty minutes for each day's work for a meal break that they were not permitted to take; and (3) failed to pay for time spent performing tasks integral to their construction work before arriving at the worksite.

Defendants required Plaintiffs and other construction workers to work long hours, often many more than 40 hours per workweek, without paying them one-and-one-half time their regular hourly rate for all hours worked over 40 in a workweek. Mendoza Decl. ¶¶ 9-10; Martinez Decl. ¶¶ 9-10; Rodriguez Decl. ¶¶ 9-10. The Plaintiffs testified that they typically reported for work at the CMS office in Alexandria at 5:00 am each day. Mendoza Decl. ¶ 5; Martinez Decl. ¶ 5; Rodriguez Decl. ¶ 5. After loading equipment and tools on CMS trucks at the office, CMS transported Plaintiffs to their project worksite. Mendoza Decl. ¶¶ 5-6; Martinez Decl. ¶¶ 5-6; Rodriguez Decl. ¶¶ 5-6. They worked at the construction worksite from 7:00 am until the CMS foremen told them to stop working, typically 8.5 to 12 hours later. Plaintiff

3

Mendoza regularly worked between 70 and 84 hours per week. Mendoza Decl. ¶ 9. Plaintiff Martinez regularly worked between 55 and 84 hours per week. Martinez Decl. ¶ 9. Plaintiff Rodriguez regularly worked between 52.5 and 84 hours per week. Rodriguez Decl. ¶ 9.

Defendants' policy or practice of violating construction workers' FLSA rights extends across their construction projects in Virginia, Maryland, and the District of Columbia. Defendants subjected Plaintiffs to the same non-payment of overtime, working meal breaks, and time spent working before arriving at the construction worksite regardless of the location of their work or the nature of the construction project. Defendant Aguilar regularly visited the worksites at which Plaintiffs performed their work and enforced the unlawful policies.

In short, the evidence at this early stage of litigation is that Defendants violated construction workers' rights to be paid the FLSA-mandated overtime wages and wages for all hours worked. These violations were the result of Defendants' policy to pay wages only at the workers' straight time rate, to deduct thirty minutes from the time worked each day as a meal break, and to exclude time worked prior to arriving at the construction worksite.

### III. ARGUMENT

#### A. Legal Framework

The FLSA allows plaintiffs to bring actions "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see also Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) ("[T]he FLSA authorizes a plaintiff alleging FLSA violations to file suit [as a collective action]."). Likewise, recent amendments to the Virginia Wage Payment Act incorporate the FLSA collective action procedures to permit individuals to bring an action under the law. Va. Code Ann. § 40.1-29(J).

Collective actions further the remedial purpose of the FLSA by allowing individual employees to pool their resources to enforce their rights. *Houston*, 591 F. Supp. 2d at 831. At the

same time, collective actions serve the interests of the courts and of all parties by providing an efficient means to resolve all common issues resulting from an unlawful policy or practice in a single proceeding. *Hoffman-La Roche*, 493 U.S. at 170; *McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 216 WL 11673838, at *2 (E.D. Va. Aug. 3, 2016) ("[J]udicial economy is served by conditionally certifying and providing notice to a larger rather than smaller class." (quoting *Houston*, 591 F. Supp. 2d at 835)).

Certification of collective actions follows a two-stage process: (1) conditional certification; and (2) decertification. *Esedebe v. Circle 2, Inc.*, No. 3:20-cv-8-HEH, 2021 WL 232595, at *5 (E.D. Va. Jan. 22, 2021). "At the conditional certification phase, courts apply a lenient standard in determining whether the proposed collective action is 'similarly situated' within the meaning of the FLSA." *Id.* (citing *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547-48 (E.D. Va. 2009)). The central question is whether the plaintiffs are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Id.* (quoting *Houston*, 591 F. Supp. 2d at 831).

In answering this question, Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Id.* (quoting *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D. Va. 2002)). At this stage, "the burden is not an onerous one." *Yerby v. City of Richmond, Va.*, Civ. No. 3:19-cv-393, 2020 WL 602268, at *3 (E.D. Va. Feb. 7, 2020). "[T]he submission of consistent employee declarations . . . has consistently been held as sufficient and admissible evidence of a policy to be considered for conditional class certification." *Hargrove v. Ryla Teleservices, Inc.*, No. 2:11-cv-344, 2012 WL 489216, at *8 (E.D. Va. Feb. 13, 2012).

Given the "lenient standard," district courts in the Fourth Circuit have routinely granted conditional certification and judicial notice in FLSA collective actions. *See e.g.*, *Esedebe*, 2021 WL 232595; *Yerby*, 2020 WL 602268; *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598 (D. Md. 2020). Further, courts have consistently held that the merits of plaintiffs' claims are irrelevant at this stage of litigation. *See, e.g.*, *Meeker v. Med. Transport, LLC*, No. 2:14-cv-426, 2015 WL 1518919, at *3 (E.D. Va. Apr. 1, 2015) ("[D]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination [of whether the individuals are similarly situated]." (quoting *De Luna-Guerrero v. N.C. Grower's Ass'n Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004))); *Gregory v. Belfor USA Group, Inc.*, No. 2:12-cv-11, 2012 WL 3062696, at *3 (E.D. Va. July 26, 2012).

Plaintiffs seek conditional certification on behalf of the following similarly-situated individuals, so that they may receive notice of their claims for unpaid wages and liquidated damages and proceed collectively:

> All individuals employed by Defendants as non-supervisory construction workers at any time during the period beginning three years prior to the date of the commencement of this action through the date of judgment.

Conditional certification and judicial notice are proper in this case because the Plaintiffs have adduced substantial evidence in the form of allegations in their Complaint and their testimony in sworn declarations to show that they and all putative members of the collective action are similarly situated due to Defendants' common, unlawful pay policies. Thus, swift certification of Plaintiffs' collective action and notice to the class is appropriate and necessary to preserve the claims of absent class members, against whom the statute of limitations is running, and is consistent with the remedial purposes of the FLSA. *See, e.g.*, *Hoffman-La Roche*, 493 U.S. at 170.

B.  **Because There Is a Reasonable Basis to Believe That There Are Similarly-Situated Employees, Collective Action Certification and Issuance of Notice Is Appropriate.**

Plaintiffs easily satisfy the "lenient" standard for conditional certification through their allegations in the Complaint and their submission of detailed declarations. *Hargrove*, 2012 WL 489216, at *8. This evidence establishes that Plaintiffs and other construction workers were similarly situated because they performed similar construction work and were similarly subjected to Defendants' common policy or practice of violating the FLSA's overtime requirements and failing to pay for all work by deducting time for meal breaks not taken and excluding work performed prior to arriving at the construction worksite.

The FLSA entitles employees to an overtime premium equal to one-half of their regular rate to be paid in addition to their regular rate or the minimum wage for all hours worked over 40 in a week. 29 U.S.C. § 207(a)(1). All three Plaintiffs testify that they consistently worked over 40 hours per week. *See* Mendoza Decl. ¶ 9; Martinez Decl. ¶ 9; Rodriguez Decl. ¶ 9. Yet, they received no premium when their hours worked exceeded 40 hours in a workweek. Mendoza Decl. ¶ 4; Martinez Decl. ¶ 4; Rodriguez Decl. ¶ 4. Plaintiffs' paystubs support Plaintiffs' declarations on this point. Mendoza Decl. ¶ 10, Exhibit A; Martinez Decl. ¶ 10, Exhibit A; Rodriguez Decl. ¶ 10, Exhibit A. These records omit any listing of overtime hours, despite Plaintiffs' testimony that they regularly worked over 40 hours in one workweek. Mendoza Decl. ¶¶ 9-10; Martinez Decl. ¶¶ 9-10; Rodriguez Decl. ¶¶ 9-10. Further, the Plaintiffs testified that, to their knowledge, none of the CMS construction workers received overtime pay. Mendoza Decl. ¶ 11; Martinez Decl. ¶ 11; Rodriguez Decl. ¶ 11. Therefore, all Plaintiffs and other construction workers are owed overtime wages.

The FLSA also requires that an employee be compensated for all work hours. All three Plaintiffs allege common violations of this requirement based on Defendants' pay deductions for

7

interrupted or nonexistent meal breaks and exclusion of work time at the CMS office prior to arriving at the construction worksite. Mendoza Decl. ¶¶ 5-6; Martinez Decl. ¶¶ 5-6; Rodriguez Decl. ¶¶ 5-6. Given Plaintiffs' long work hours, often well beyond 40 in a workweek, the hours Defendants deducted or excluded from Plaintiffs' pay are owed to them at the overtime premium rate.

The FLSA's implementing regulations recognize that unpaid meal breaks are lawful only if the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a). All three Plaintiffs received no pay for 30 minutes per shift for meals breaks that Defendants did not permit them to take. Mendoza Decl. ¶ 7; Martinez Decl. ¶ 7; Rodriguez Decl. ¶ 7. They testified that Defendant Aguilar instructed them to continue or resume work during periods where they sought to take a meal break. Mendoza Decl. ¶ 7; Martinez Decl. ¶ 7; Rodriguez Decl. ¶ 7. Therefore, all Plaintiffs and other construction workers are owed wages for meal breaks that were not bona fide breaks.

In addition, the Supreme Court has recognized that "activities performed either before or after the regular work shift are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which [the employees] are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). All three Plaintiffs were required to report to Defendants' Alexandria office at 5:00 am each workday. Mendoza Decl. ¶¶ 5-6; Martinez Decl. ¶¶ 5-6; Rodriguez Decl. ¶¶ 5-6. They received no pay for time spent loading tools and equipment onto trucks at the CMS office and prior to arriving at the construction worksite. Mendoza Decl. ¶ 5; Martinez Decl. ¶ 5; Rodriguez Decl. ¶ 5. These tasks are integral to Plaintiffs' principal activity of performing construction

8

work using such tools and equipment. Therefore, all Plaintiffs and other construction workers are owed wages for this work time.

This court has conditionally certified the FLSA claims of workers who alleged similar violations. *See Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006) (certifying a collective action where all plaintiffs were subject to defendants' "predominant policy of withholding . . . overtime pay"); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-00363, 2012 WL 4739534, at *10 (E.D. Va. Oct. 2, 2012) (certifying a collective action where all plaintiffs were subject to defendants' policy of requiring work during unpaid meals breaks); *Epps v. Arise Scaffolding & Equip., Inc.*, No. 2:10-cv-189, 2011 WL 1566001, at *1 (E.D. Va. Apr. 22, 2011) (denying motion to decertify collective action where all plaintiffs were subject to policy requiring employees to report to the shop early, load company vans, and ride to the job sites together as a crew). For the reasons described above, conditional certification is equally appropriate in the instant case.

### C. Notice Should Be Given Promptly to Promote Judicial Economy and Efficient Case Management, and to Avoid Prejudice to the Opt-In Plaintiff Class.

Once the court has conditionally certified a FLSA collective action, it must determine how to notify class members of their option to join the underlying action. *See, e.g.*, *Gregory v. Belfor USA Group, Inc.*, No. 2:12-cv-11, 2012 WL 3062696, at *3 (E.D. Va. July 26, 2012) (noting the Court's discretion to facilitate notice). The benefits of a collective action cannot be realized if the employees who suffered from the unlawful activity do not receive timely notice of the collective action and of their opportunity to opt-in. *See Hoffman-La Roche*, 493 U.S. at 170. Accordingly, courts have the power to facilitate the issuance of a "timely, accurate, and informative" notice to potential class members. *Id.* at 172.

Speed is of the essence in issuing notice because the statute of limitations continues to run under the FLSA until aggrieved employees affirmatively opt-in to the action. *See Houston*, 591 F. Supp. 2d at 831 ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding."). In the absence of timely notice, employees with viable claims of unpaid wages could be deprived of the opportunity to participate until after their claims are diminished or extinguished by the passage of time.

Plaintiffs propose the attached Notice of Collective Action and Opt-In Consent Form as Exhibits A and B, which will be disseminated in English and Spanish, and request that the Court approve these documents for distribution to the class. Plaintiffs have carefully structured the proposed Notice to provide timely and accurate information of the pending action, so that other members of the proposed class can make a well-informed decision about their participation. Modeled on notices previously approved by this Court, the proposed Notice states the names of the parties and nature of the Plaintiffs' claims, clarifies that the question of liability has not been decided and that the results of the suit are not guaranteed, explains how to opt in to the action, and provides assurance that it is unlawful for employers to retaliate against those who participate. *See, e.g.*, *Esedebe*, 2021 WL 232595, at *6 (approving proposed notice similar to Plaintiffs' Exhibit A).

To accomplish effective distribution of the notice, Plaintiffs request an Order requiring Defendants to promptly: (1) provide Plaintiffs a computer-readable database of names, last known addresses, phone numbers, and dates of employment for all current and former construction workers who worked for or otherwise received paychecks from Defendants since

10

May 30, 2018; and (2) post a copy of the Notice in English and Spanish in an appropriate, visible, accessible location at Defendants' office location and in Defendants' vehicles used for transporting workers to construction worksites. These basic components of the proposed notification plan reflect long-standing standard practice in FLSA litigation, as reaffirmed in previous orders of this Court. *See, e.g.*, *Stone v. SRA Int'l, Inc.*, No. 2:14-cv-209, 2014 WL 5410628, at *10 (E.D. Va. Oct. 22, 2014) (ordering defendant to produce "the names, last known mailing addresses, home and/or mobile phone numbers, and email addresses of all potential members of the conditionally certified class" to facilitate the dissemination of an FLSA collective action notice).

Plaintiffs further seek an Order permitting them to disseminate notice via text message, so that they can reach members of the collective who may be impervious to traditional forms of notice delivery. The proposed FLSA collective of construction workers is largely a Spanish-speaking group. Mendoza Decl. ¶ 13; Martinez Decl. ¶ 13; Rodriguez Decl. ¶ 13. Courts have recognized that a language barrier may make these individuals more difficult to contact. *See e.g.*, *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 172 (D.D.C. 2014). Further, Plaintiffs and the other construction workers communicated with their employer by text message, including receiving daily assignments. Mendoza Decl. ¶ 12; Martinez Decl. ¶ 12; Rodriguez Decl. ¶ 12. Courts in this Circuit have recognized that mail-only notice procedures are "clearly outdated." *Baylor*, 443 F. Supp. 3d at 609. Accordingly, notice by text message in addition to mail is appropriate in this case.

Plaintiffs propose that to be timely, potential opt-in Plaintiffs must return their signed consent forms to Plaintiffs' counsel, postmarked within 90 days after the date on which the Notice and Opt-In Consent Forms are mailed. This is the standard notice period for potential opt-

ins in this Circuit. *Baylor*, 443 F. Supp. 3d at 609; *Stone*, 2014 WL 5410628, at *11. Plaintiffs' counsel will file the Opt-In Consent Forms with the Court on an ongoing basis and no later than one week after the end of the 90-day notice period.

In addition, Plaintiffs seek permission to send a single reminder notice halfway through the 90-day opt-in period. A reminder notice is "nothing more than a targeted second contact with those likely to be eligible to join the collective action," a strategy which courts in this Circuit and others have previously approved to effectuate the remedial purposes of the FLSA. *Boyd v. SFS Comm'ns, LLC*, No. PJM 15-3068, 2017 WL 386539, at *3 (D. Md. Jan. 27, 2017); *Walters v. Buffets, Inc.,* No. 6:13-cv-02995, 2016 WL 4203851, at *1 (D.S.C. March 1, 2016) (approving a reminder notice as a simple means to "inform as many plaintiffs as possible of their right to opt into a collective action"); *Morris v. Lettire Constr. Corp.*, 896 F.Supp.2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate").

For each day that notice is not provided to potential opt-in plaintiffs, employees with valid claims are losing their ability to collect their earned wages. Notice is therefore essential to inform employees of the requirements necessary to protect their interests. Without notice, potential members of the class will not be aware of their right to join this action. Instead, their claims will be diminished or extinguished by the operation of time.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion as follows:

    a.      Conditionally certify this case as a Section 216(b) collective action;

b.  Approve the issuance of Plaintiffs' proposed Notice of Collective Action Lawsuit and Opt-In Consent Form;

c.  Order Defendants to provide Plaintiffs, within 14 days, a computer-readable database of names, last known addresses, phone numbers, and the dates of employment for all current and former non-supervisory employees who performed construction work at any point since three years before the date of this lawsuit;

d.  Order Defendants to post the Notice in CMS's Alexandria office in an area that is accessible to and easily viewed by construction workers, and in Defendants' vehicles used to transport workers to construction worksites;

e.  Allow Plaintiffs to mail the Notice and Opt-In Forms to all eligible class members;

f.  Allow Plaintiffs to send the Notice and Opt-In Forms to all eligible class members by text message;

g.  Order that members of the FLSA collective will have 90 days from the mailing of notice of this action to opt into the action; and

h.  Authorize Plaintiffs to send, halfway through the 90-day notice period, a single reminder Notice to all members of the proposed collective who have not responded to the original Notice.

Dated June 8, 2021					Respectfully submitted,

							/s/ *Mark Hanna*
							Mark Hanna (Virginia Bar No. 45442)
							Roseann R. Romano (pro hac forthcoming)
							Murphy Anderson PLLC
							1401 K Street NW, Suite 300
							Washington, DC 20005
							Phone: (202) 223-2620
							Fax: (202) 296-9600
							mhanna@murphypllc.com