EN EL TRIBUNAL DE LOS ESTADOS UNIDOS
PARA EL DISTRITO ESTE DE VIRGINIA
División de Alexandria

| | |
|---|---|
| FRANCISCO MENDOZA, MIGUEL MARTINEZ and KEVIN RODRIGUEZ, a nombre de ellos mismos y todas las personas situadas similarmente,<br><br>Demandantes,<br><br>v.<br><br>CARDINAL MULTI SERVICES LLC y WILSON O. AGUILAR,<br><br>Demandados. | Civil Action No. |

## DECLARACIÓN DE FRANCISCO MENDOZA

Yo, Francisco Mendoza, soy mayor de 18 años y soy competente para testificar. Declaro lo siguiente de conformidad con la presente:

1. Fui contratado por Cardinal Multi Services LLC ("CMS") y Wilson Aguilar para realizar trabajo de construcción desde aproximadamente julio del 2019 hasta diciembre del 2020.

2. Mientras trabajaba para CMS y el Sr. Aguilar, realicé una variedad de trabajos de construcción. La mayoría de mi trabajo involucraba construyendo calzadas, banquetas, aceras, y rampas de concreto. También realicé trabajo relacionado a las pipas de utilidad colocadas debajo de las calles y proveí control de tráfico. Trabajé en proyectos en Virginia y en el Distrito de Columbia.

3. El Sr. Aguilar me contrató en nombre de CMS. El determinó mi tasa horaria y estableció las pólizas de pago de la compañía. A pesar de que mi trabajo

fue supervisado directamente por los capataces de CMS, el Sr. Aguilar visitaba a los sitios de construcción donde yo realizaba mi trabajo frecuentemente. El Sr. Aguilar supervisó la operación entera de CMS.

4. Inicialmente, CMS y el Sr. Aguilar me pagaron una tasa horaria de $12. Aproximadamente en septiembre del 2019, recibí un aumento a $14 por hora y a $17 por hora aproximadamente en noviembre del 2019. La tasa horaria era lo mismo independientemente de las horas que había trabajado en la semana. CMS y el Sr. Aguilar no pagaron la tasa de hora y media por las horas trabajadas en exceso de 40 en una semana.

5. El Sr. Aguilar me mandó presentarme en la oficina de CMS en Alexandria y me ordenó que llegara temprano. Yo típicamente llegaba a la oficina de CMS a las 5:00 am todos los días de trabajo. Cuando llegaba, los capataces me mandaban a mí y a otros trabajadores subir herramientas y equipo a las camionetas para los proyectos del día. A veces, los capataces proveyeron instrucciones y tareas de trabajo en la oficina de CMS. No fui pagado por este tiempo.

6. CMS me requería a mí y a otros trabajadores que viajáramos juntos en las camionetas de CMS a los sitios de trabajo cada día. Las camionetas típicamente salían de la oficina de CMS en Alexandria alrededor de las 6:00 am o las 6:30 am para manejar al sitio de trabajo. No fui pagado por este tiempo.

7. CMS y el Sr. Aguilar dedujeron 30 minutos de mis horas cada día para un descanso de almuerzo no-pagado. La mayoría de los días, no fui permitido tomar un descanso completo de 30 minutos para el almuerzo. Si yo tomaba un descanso

para comer el almuerzo, CMS y el Sr. Aguilar me mandaban regresar al trabajo. Típicamente, nada más paraba de trabajar por diez minutos o menos para un descanso de almuerzo. No fui permitido salir del sitio de trabajo.

8. En respuesta a quejas sobre el descuento de 30 minutos de las horas de trabajo por el supuesto descanso de almuerzo, yo escuché al Sr. Aguilar decir: "Yo no pago esa media hora."

9. Durante mi empleo con CMS, yo regularmente trabajaba 70 a 84 horas por semana. Mis horas fueron determinadas por el Sr. Aguilar y los capataces de CMS, quienes me dirigieron cuándo empezar a trabajar y cuándo terminar de trabajar. Los capataces de CMS llevaron un registro de mis horas en el sitio de trabajo en un cuaderno diario. Yo típicamente trabajaba lunes a viernes y a veces el sábado si el Sr. Aguilar y los capataces me ordenaban hacerlo.

10. A pesar de que yo típicamente trabajaba más de 80 horas en el periodo de pago quincenal, mis colillas de pago incorrectamente reportaban que había trabajado 80 horas o menos. CMS solo me pagaba de acuerdo con mi tasa horaria regular por las horas reportadas. Nunca recibí ningún pago de sobretiempo por trabajar más de 40 horas en una semana. Adjunto como Exhibición A están copias correctas y verdaderas de algunas de mis colillas de pago.

11. He hablado con otros trabajadores de CMS quienes tuvieron experiencias similares a mí con respeto a su compensación. Ninguno fue pagado una prima por las horas que trabajaron en exceso de 40 durante la semana laboral. Todos tuvieron 30 minutos deducidos de su pago por un descanso de almuerzo que

no fueron permitidos tomar. Ninguno fue pagado por trabajo realizado antes de llegar al sitio de trabajo.

12. Yo me comunicaba regularmente con el Sr. Aguilar y mi capataz por medio de mensaje de texto. A veces recibí mi tarea diaria por medio de mensaje de texto.

13. Yo soy un hablante nativo del español. Solo puedo hablar y entender una cantidad pequeña del inglés. Mientras trabajaba en CMS, me comunicaba con el Sr. Aguilar, mi capataz, y otros trabajadores de construcción en español.

Declaro bajo pena de perjurio que los hechos anteriores son verdaderos y correctos según mi mejor conocimiento.

6/2/21
Fecha

_____
Francisco Mendoza

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| FRANCISCO MENDOZA, MIGUEL MARTINEZ and KEVIN RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARDINAL MULTI SERVICES LLC and WILSON O. AGUILAR,<br><br>Defendants. | Civil Action No. |

## DECLARATION OF FRANCISCO MENDOZA

I, Francisco Mendoza, am over 18 years of age and am competent to testify. I declare as follows:

1. I was employed by Cardinal Multi Services LLC ("CMS") and Wilson Aguilar to perform construction work from about July 2019 to December 2020.

2. While working for CMS and Mr. Aguilar, I performed a variety of construction work. Most of my work involved building concrete driveways, curbs, sidewalks, and ramps. I also performed some work relating to utility pipes under roads and provided traffic control. I worked on projects in Virginia and the District of Columbia.

3. Mr. Aguilar hired me on behalf of CMS. He determined my hourly wage and set the company's pay policies. Although my work was directly supervised

by CMS foremen, Mr. Aguilar frequently visited the construction sites where I performed my work. Mr. Aguilar oversaw the entire CMS operation.

4. Initially, CMS and Mr. Aguilar paid me an hourly rate of $12. I received a raise in approximately September 2019 to $14 per hour and in approximately November 2019 to $17 per hour. The hourly rate was the same regardless of the number of hours I worked in the week. CMS and Mr. Aguilar did not pay time-and-a-half for hours worked over 40 in a week.

5. Mr. Aguilar instructed me to report to the CMS office in Alexandria and told me to show up early. I typically arrived at the CMS office at 5:00 am every workday. When I arrived, the foremen instructed me and other workers to load tools and equipment onto trucks for the day's projects. Sometimes the foremen provided work instructions and assignments at the CMS office. I was not paid for this time.

6. CMS required me and other workers to travel together in CMS trucks to the worksites each day. The trucks typically left the CMS office in Alexandria around 6:00 am or 6:30 am to drive to the worksite. I was not paid for this time.

7. CMS and Mr. Aguilar deducted 30 minutes from my hours each day for an unpaid lunch break. On most days, I was not permitted to take a full 30-minute break for lunch. If I took a break to eat lunch, CMS and Mr. Aguilar instructed me to get back to work. Typically, I only stopped working for ten minutes or less for a lunch break. I was not permitted to leave the worksite.

8. In response to complaints about the 30-minute deduction from work hours for the supposed lunch break, I heard Mr. Aguilar state: "I don't pay that half-hour."

9. Throughout my employment with CMS, I regularly worked 70 to 84 hours per week. My hours were determined by Mr. Aguilar and the CMS foremen, who directed me when to start work and when to stop work. The CMS foremen tracked my hours at the worksite in a logbook. I typically worked Monday through Friday and sometimes on Saturday if Mr. Aguilar and the foremen told me to do so.

10. Even though I typically worked more than 80 hours in the biweekly pay period, my paystubs inaccurately reported that I worked 80 or fewer hours. CMS only paid me at my straight-time rate for the reported hours. I never received any overtime pay for working more than 40 hours in a week. Attached as Exhibit A are true and correct copies of some of my paystubs.

11. I have spoken to other workers at CMS who had similar experiences to me regarding their compensation. None were paid a premium for hours worked over 40 in a workweek. All had thirty minutes deducted from their pay for a lunch break that they were not permitted to take. None were paid for work performed before arriving at the worksite.

12. I regularly communicated with Mr. Aguilar and my foreman by text message. Sometimes I received my daily assignment by text message.

13. I am a native Spanish-speaker. I can only speak and understand a small amount of English. While working at CMS, I communicated with Mr. Aguilar, my foreman, and other construction workers in Spanish.

I declare under penalty of perjury that the foregoing is true and correct.

_____  _____

Date   Francisco Mendoza

# Exhibit A



Cardinal MultiServices, LLC

07/09/2020   Francisco Javier Mendoza   1,242.00
Sub-contractor services

0100 BB&T Checking Acct   Sub-contractor services





inal MultiServices, LLC
09/04/2020   Francisco Javier Mendoza                                      28(
                           Sub-contractor services                                884.00

&T Checking Acct        Sub-contractor services

Cardinal MultiServices, LLC  
10/02/2020    Francisco Javier Mendoza                                                        2983
                                          Sub-contractor services                              1,632.00

10100 BB&T Checking Acct            Sub-contractor services                                    1,632.00



Cardinal MultiServices, LLC
10/15/2020   Francisco Javier Mendoza
             Sub-contactor services                    1,309.00

BB&T Checking Acct      Sub-contactor services
                                                       1,309.0

