**EN EL TRIBUNAL DE LOS E.E.U.U**
**PARA EL DISTRITO ESTE DE VIRGINIA**
División de Alexandria

| | |
|---|---|
| FRANCISCO MENDOZA, MIGUEL MARTINEZ y KEVIN RODRIGUEZ, a nombre de ellos mismos y todas las personas situadas similarmente,<br><br>Demandantes,<br><br>v.<br><br>CARDINAL MULTI SERVICES LLC y WILSON O. AGUILAR,<br><br>Demandados. | Civil Action No. |

## DECLARACIÓN DE KEVIN RODRÍGUEZ

Yo, Kevin Rodríguez, soy mayor de 18 años y soy competente para testificar. Declaro lo siguiente de conformidad con la presente:

1. Fui contratado por Cardinal Multi Services LLC ("CMS") y Wilson Aguilar para realizar trabajo de construcción desde aproximadamente abril del 2020 hasta enero del 2021.

2. Mientras trabajaba para CMS y el Sr. Aguilar, realicé una variedad de trabajos de construcción. Mi trabajo involucraba proveer control de tráfico para proyectos de construcción de carreteras de asfalto. También realicé trabajo relacionado a las pipas de utilidad colocadas debajo de las calles. Trabajé mayormente en proyectos en Virginia.

3. El Sr. Aguilar me contrató en nombre de CMS. El determinó mi tasa horaria y estableció las pólizas de pago de la compañía. A pesar de que mi trabajo

fue supervisado directamente por los capataces de CMS, el Sr. Aguilar visitaba a los sitios de construcción donde yo realizaba mi trabajo frecuentemente. El Sr. Aguilar supervisó la operación entera de CMS.

4. Inicialmente, CMS y el Sr. Aguilar prometieron pagarme una tasa horaria de $14. Fui pagado $12 o $14 por hora durante mi empleo. La tasa horaria era lo mismo independientemente de las horas que había trabajado en la semana. CMS y el Sr. Aguilar no pagaron la tasa de hora y media por las horas trabajadas en exceso de 40 en una semana.

5. El Sr. Aguilar me mandó presentarme en la oficina de CMS en Alexandria y me ordenó que llegara temprano. Yo típicamente llegaba a la oficina de CMS a las 5:00 am todos los días de trabajo. Cuando llegaba, los capataces me mandaban a mí y a otros trabajadores subir herramientas y equipo a las camionetas para los proyectos del día. A veces, los capataces proveyeron instrucciones y tareas de trabajo en la oficina de CMS. No fui pagado por este tiempo.

6. CMS me requería a mí y a otros trabajadores que viajáramos juntos en las camionetas de CMS a los sitios de trabajo cada día. Las camionetas típicamente salían de la oficina de CMS en Alexandria alrededor de las 6:00 am o las 6:30 am para manejar al sitio de trabajo. No fui pagado por este tiempo.

7. CMS y el Sr. Aguilar dedujeron 30 minutos de mis horas cada día para un descanso de almuerzo no-pagado. La mayoría de los días, no fui permitido tomar un descanso completo de 30 minutos para el almuerzo. Si yo tomaba un descanso para comer el almuerzo, CMS y el Sr. Aguilar me mandaban regresar al trabajo.

Típicamente, nada más paraba de trabajar por diez minutos o menos para un descanso de almuerzo. No fui permitido salir del sitio de trabajo.

8.  En respuesta a quejas sobre el descuento de 30 minutos de las horas de trabajo por el supuesto descanso de almuerzo, yo escuché al Sr. Aguilar decir: "Yo no pago esa media hora."

9.  Durante mi empleo con CMS, yo regularmente trabajaba 52.5 a 84 horas por semana. Mis horas fueron determinadas por el Sr. Aguilar y los capataces de CMS, quienes me dirigieron cuándo empezar a trabajar y cuándo terminar de trabajar. Los capataces de CMS llevaron un registro de mis horas en el sitio de trabajo en un cuaderno diario. Yo típicamente trabajaba lunes a viernes y a veces el sábado si el Sr. Aguilar y los capataces me ordenaban hacerlo.

10.  A pesar de que yo típicamente trabajaba más de 80 horas en el periodo de pago quincenal, mis colillas de pago incorrectamente reportaban que había trabajado 80 horas o menos. CMS solo me pagaba de acuerdo con mi tasa horaria regular por las horas reportadas. Nunca recibí ningún pago de sobretiempo por trabajar más de 40 horas en una semana. Adjunto como Exhibición A están copias correctas y verdaderas de algunas de mis colillas de pago.

11.  Hé hablado con otros trabajadores de CMS quienes tuvieron experiencias similares a mí con respeto a su compensación. Ninguno fue pagado una prima por las horas que trabajaron en exceso de 40 durante la semana laboral. Todos tuvieron 30 minutos deducidos de su pago por un descanso de almuerzo que

no fueron permitidos tomar. Ninguno fue pagado por trabajo realizado antes de llegar al sitio de trabajo.

12. Yo me comunicaba regularmente con el Sr. Aguilar y mi capataz por medio de mensaje de texto. A veces recibía mi proyecto del día por medio de mensaje de texto de parte del capataz.

13. Yo soy un hablante nativo del español. Solo puedo hablar y entender una cantidad pequeña del inglés. Mientras trabajaba en CMS, me comunicaba con el Sr. Aguilar, mi capataz, y otros trabajadores de construcción en español.

Declaro bajo pena de perjurio que los hechos anteriores son verdaderos y correctos según mi mejor conocimiento.

06/07/2021
Fecha

_____
Kevin Rodríguez

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FRANCISCO MENDOZA, MIGUEL MARTINEZ and KEVIN RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>CARDINAL MULTI SERVICES LLC and WILSON O. AGUILAR,<br><br>                    Defendants. | Civil Action No. |

## **DECLARATION OF KEVIN RODRIGUEZ**

I, Kevin Rodriguez, am over 18 years of age and am competent to testify. I declare as follows:

1.    I was employed by Cardinal Multi Services LLC ("CMS") and Wilson Aguilar to perform construction work from about April 2020 to January 2021.

2.    While working for CMS and Mr. Aguilar, I performed a variety of construction work. My work involved providing traffic control for asphalt road construction projects. I also performed work relating to utility pipes under roads. I worked on projects mostly in Virginia.

3.    Mr. Aguilar hired me on behalf of CMS. He determined my hourly wage and set the company's pay policies. Although my work was directly supervised by CMS foremen, Mr. Aguilar frequently visited the construction sites where I performed my work. Mr. Aguilar oversaw the entire CMS operation.

4. Initially, CMS and Mr. Aguilar promised to pay me an hourly rate of $14. I was paid either $12 or $14 per hour during my employment. The hourly rate was the same regardless of the number of hours I worked in the week. CMS and Mr. Aguilar did not pay time-and-a-half for hours worked over 40 in a week.

5. Mr. Aguilar instructed me to report to the CMS office in Alexandria and told me to show up early. I typically arrived at the CMS office at 5:00 am every workday. When I arrived, the foremen instructed me and other workers to load tools and equipment onto trucks for the day's projects. Sometimes the foremen provided work instructions and assignments at the CMS office. I was not paid for this time.

6. CMS required me and other workers to travel together in CMS trucks to the worksites each day. The trucks typically left the CMS office in Alexandria around 6:00 am or 6:30 am to drive to the worksite. I was not paid for this time.

7. CMS and Mr. Aguilar deducted 30 minutes from my hours each day for an unpaid lunch break. On most days, I was not permitted to take a full 30-minute break for lunch. Instead, if I took a break to eat lunch, CMS and Mr. Aguilar instructed me to get back to work. Typically, I only stopped working for ten minutes or less for a lunch break. I was not permitted to leave the worksite.

8. In response to complaints about the 30-minute deduction from work hours for the supposed lunch break, I heard Mr. Aguilar state: "I don't pay that half-hour."

9. Throughout my employment with CMS, I regularly worked 52.5 to 84 hours per week. My hours were determined by Mr. Aguilar and the CMS foremen,

who directed me when to start work and when to stop work. The CMS foremen tracked my hours at the worksite in a logbook. I typically worked Monday through Friday and sometimes on Saturday if Mr. Aguilar and the foremen told me to do so.

10. Even though I typically worked more than 80 hours in the biweekly pay period, my paystubs inaccurately reported that I worked 80 or fewer hours. CMS only paid me at my straight-time rate for the reported hours. I never received any overtime pay for working more than 40 hours in a week. Attached as Exhibit A are true and correct copies of some of my paystubs.

11. I have spoken to other workers at CMS who had similar experiences to me regarding their compensation. None were paid a premium for hours worked over 40 in a workweek. All had thirty minutes deducted from their pay for a lunch break that they were not permitted to take. None were paid for work performed before arriving at the worksite.

12. I regularly communicated with Mr. Aguilar and my foreman by text message. Sometimes I received my project for the day by text message from a foreman.

13. I am a native Spanish-speaker. I can only speak and understand a small amount of English. While working at CMS, I communicated with Mr. Aguilar, my foreman, and other construction workers in Spanish.

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
Date                            Kevin Rodriguez

# Exhibit A











**CARDINAL MULTISERVICES, LLC**   1592

Kevin A. Rodriguez
12211 Wimbleton St
Kettering
Upper Marlboro
MD, 20774

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | 77.00 | 14.00 | 1,078.00 | 3,628.00 |

| TAXES | Current | YTD |
|---|---|---|
| VA Income Tax | 42.13 | 130.45 |
| Medicare | 15.63 | 52.61 |
| Social Security | 66.84 | 224.94 |
| Federal Income Tax | 0.00 | 0.00 |
| MD Income Tax | 78.67 | 260.31 |

Cardinal Multi Services LLC
5504 Oakwood Road
Alexandria
VA, 22310
703-310-4147

| OTHER PAY | Current | YTD |
|---|---|---|

| DEDUCTIONS | Current | YTD |
|---|---|---|

Pay Period
12/05/2020 - 12/18/2020

Pay Date
12/23/2020

| BENEFITS | Used | Available |
|---|---|---|

| SUMMARY | Current | YTD |
|---|---|---|
| Total Pay | $1,078.00 | $3,628.00 |
| Taxes | $203.27 | $668.31 |
| Deductions | $0.00 | $0.00 |

**NET PAY:**   $874.73

MEMO:

